UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM J. BENNETT,

    Plaintiff,

    v.

SEAN GOW and JANE DOE GOW; GRAYS HARBOR COUNTY; DOES I-III,

    Defendant.

Case No. C07-5467 FDB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This civil rights action against Grays Harbor County Sheriff's Deputy Sean Gow and Grays Harbor County stems from the alleged conduct of Deputy Gow in effectuating the arrest of Plaintiff William Bennett. The complaint alleges various civil rights were violated, stated as the "constitutionally protected liberty interests in his personal security, bodily integrity, and freedom from harmful physical contact and emotional injury, and the derivative right to procedural and substantive due process of law .... , and constitutionally protected right to be free of unreasonable seizure of his person." State law causes of action asserted are battery, false imprisonment, outrage, trespass to land, trespass to chattel, and vicarious liability of Grays Harbor County. Before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims. After having

ORDER - 1

reviewed all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants the motion for summary judgment and dismisses Plaintiff's action in its entirety.

**Introduction and Background**

On September 5, 2005, 67 year-old William Bennett was working as a volunteer at his daughter's general store in Hogan's Corner, near Ocean Shores, Washington. Part of the sore's business was the rental of movie videos. A few weeks prior to September 5, 2005, a store customer, Deann Beglinger, came in and requested to be allowed to rent videos. Mr. Bennett was working at the store and handled Ms. Beglinger's rental membership application. In the process of completing the application, Mr. Bennett obtained Beglinger's driver's license for photocopying. Upon the completion of the application, Beglinger rented two videos and left the store, inadvertently leaving her driver's license behind. The videos were not returned on time. After a reminder telephone call, Ms. Beglinger's daughter returned the videos, but did not pay the $8.00 in late fees that had been incurred.

On September 5, 2005 Beglinger arrived at the store and requested that Mr. Bennett return her driver's license. Mr. Bennett told Beglinger that he would not return the driver's license until the late fees were paid. Beglinger then left the store and called 911 from a nearby phone to report Mr. Bennett's refusal to return her driver's license.

Sheriff's Deputy Gow was on patrol and took the dispatch call. Deputy Gow contacted Ms. Beglinger and was informed of the circumstances of Mr. Bennett's refusal to return the drier's license. Deputy Gow proceed to the store, followed by Ms. Beglinger. Upon arrival, Deputy Gow entered the store and contacted Mr. Bennett. Mr. Bennett admitted he had the driver's license and refused Deputy Gow's request to turn it over to him. Deputy Gow informed Mr. Bennett that keeping the license would constitute theft. Nonetheless, Mr. Bennett would not relent. To emphasize his resolve, Mr. Bennett, extended his hands and arms out as if to be handcuffed and said,

ORDER - 2

"Go ahead, arrest me." Deputy Gow then exited the store and returned to his patrol car to contact his sergeant and relay the circumstances. Sergeant Cork agreed with Deputy Gow that Mr. Bennett's retention of the driver's license would constitute third degree theft. The two discussed Deputy Gow's options: arrest Mr. Bennett, issue a citation, or refer the matter to the prosecutor's office.

While Deputy Gow was in his patrol car discussing the situation with his sergeant, Mr. Bennett determined that he would leave the store and cross the parking lot to where his daughter, the store owner, was conducting a tent sale. Mr. Bennett exited the store and walked passed Deputy Gow's patrol car. Deputy Gow, seeing Mr. Bennett actions, exited his vehicle and began to follow Mr. Bennett. As Deputy Gow approach Mr. Bennett, he told him that he would be cited for theft for refusing to return the license and theat he was not free to leave. Mr. Bennett then stopped and put his hands behind his back as if signaling to be handcuffed. Deputy Gow took a hold of Mr. Bennett's arm and Mr. Bennett turned his body as if attempting to twist out of the grasp of Deputy Gow. In response, Deputy Gow stated to Mr. Bennett that he was attempting to resist arrest. As Mr. Bennett continued to twist in an apparent attempt to get to get out of the Deputy's hold, Deputy Gow forced Mr. Bennett to the ground and successfully handcuffed him.

Within five minutes Ocean Shore police officer Joe Brouillard arrived on the scene and assisted Deputy Gow. Mr. Bennett was lifted to his feet and placed in the back of Deputy Gow's patrol car. The arresting procedure did not result in any physical injury to Mr. Bennett.

Deputy Gow then reentered the store with Mr. Bennett's daughter to retrieve the driver's license and the store surveillance video of the incident. Mr. Bennett's daughter refused to release the video, but agreed to make and turn over a copy. The driver's license could not be located.

While Deputy Gow was inside the store Mr. Bennett remained seated in the patrol car and began to feel uncomfortable. Although the outside temperature was in the mid-sixties, Mr. Bennett indicated he was suffering from the heat of the closed vehicle. In response, Deputy Gow turned on

ORDER - 3

the air conditioning and opened the divider to the back seat so that cool air could pass through. Mr. Bennett continued to complain that he was feeling physically ill and Deputy Gow requested an aid car, which arrived minutes later. Mr. Bennett was then issued a citation and released to the aid car personnel.

**Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, at 322-23. Rule 56(e) compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. Anderson, at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not significantly probative." Id. at 249-50.

**Abandoned Claims**

The Defendants moved for summary judgment on all claims asserted by Plaintiff. In

ORDER - 4

response, the Plaintiff specifically withdrew his state law claims of trespass to land and chattels. Thus, these two state law claims are subject to summary dismissal.

Plaintiff has failed to assert any legal or factual basis for municipal liability on his federal claims for violation of civil rights. See, Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690 (1978); Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). Having failed to file any response to the motion for summary judgment on this claim, Plaintiff is deemed to have admitted the merits thereof. Local Rule CR 7(b)(2). Defendant Grays Harbor County is entitled to summary judgment on Plaintiff's civil rights claims.

Plaintiff has also failed to present any argument in opposition to the motion for dismissal of the claims of deprivation of procedural or substantive due process. Pursuant to Local Rule CR 7(b)(2) the Court considers the lack of opposition an admission that summary judgment on theses claims has merit. The causes of action for violation of procedural and substantive due process are dismissed

The sole remaining federal civil rights claim is that of constitutionally unreasonable seizure: arrest without probable cause and the use of unreasonable force.

**Civil Rights Claims and Qualified Immunity**

Law enforcement officers enjoy qualified immunity from liability for civil damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478 (1991). In Saucier v. Katz, 533 U.S. 194, (2001), the United States Supreme Court set forth a particular sequence of questions the court must consider when determining whether qualified immunity exists. First, the court considers the threshold question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional

ORDER - 5

right was violated and if the facts were as alleged, the inquiry ends and defendants prevail. If, however, "a violation could be made on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. The relevant inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he confronted. Id. at 202. Saucier further noted that second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.

**Probable Cause for Arrest**

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amend. IV. The issue is whether the officer's conduct violated federal law or the constitution, not state law or some local agreement, though certainly noncompliance with local or state law may be relevant in determining whether the police's conduct was reasonable for Fourth Amendment purposes. The Supreme Court recently held that a police officer who makes an arrest that is based on probable cause but who is prohibited by state law from doing so does not violate the Fourth Amendment. Virginia v. Moore, ___ U.S. ___, 128 S.Ct. 1598, 1607 (2008). In concluding its discussion of the officers' authority to make the arrest, the Court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." Moore, 128 S.Ct. at 1607.

Washington law defines the crime of theft as to wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services. RCW 9A.56.020. Plaintiff Bennett admitted to Deputy Gow that he had possession of Ms. Beglinger's drivers license and refused the Deputy's request to return it to her. Thus, ample evidence in the record supports the reasonable conclusion that Deputy Gow was acting in a good-faith belief that he had lawful authority at the time he made the arrest. See, RCW

ORDER - 6

10.31.100(1)(providing authority to arrest without warrant). The evidence also supports a finding that Deputy Gow had probable cause to arrest Plaintiff for the offense of resisting arrest. See, RCW 9A.76.040(1). Mr. Bennett was resisting arrest when attempting to free himself from Deputy Gow's grasp.

Under the totality of the circumstances, Plaintiff has failed to raise a material question of fact as to Deputy Gow's probable cause to arrest, and he has therefore failed to establish an unlawful arrest under the Fourth Amendment. Moreover, assuming arguendo that Plaintiff could show that Deputy Gow violated his Fourth Amendment right to be free from unlawful arrest, Plaintiff has failed to establish that Gow's decision to arrest was so obviously unlawful that a reasonable police officer would have known he was violating Plaintiff's rights. Deputy Gow is entitled to qualified immunity on Mr. Bennett's unlawful arrest claim.

**Use of Force to Arrest**

Plaintiff further claims that Deputy Gow used excessive force in effectuating his arrest in violation of the Fourth Amendment. The Ninth Circuit has held that a § 1983 claim may be based upon the Fourth Amendment if the police used excessive force during an arrest. Robins v. Harum, 773 F.2d 1004 (9th Cir. 1985). Police officers may only use force that is objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386 (1989). In the Ninth Circuit, courts evaluate claims of excessive force under the Fourth Amendment's objective reasonableness standard. Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996). "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Trial courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396. Assessing the nature and quality of a given intrusion requires the fact finder to evaluate the type and amount of force inflicted. Chew v. Gates, 27 F.3d

ORDER - 7

1432, 1440 (9th Cir. 1994). The governmental interest is measured by considering: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether he was actively resisting arrest, and any other exigent circumstances present at the time. Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001).

Defendants argue that they are entitled to qualified immunity on Plaintiff's claim of excessive force. The court must first determine, whether viewed in the light most favorable to Mr. Bennett, the facts alleged show the Deputy Gow's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Here, Plaintiff contends that Deputy Gow grabbed him by the arm and shoulder and when he attempted to twist/pull away, Deputy Gow forced him to the ground with a leg sweep, placed his knee in his back and pulled his arms up behind him and forcibly handcuffed him while face down on the pavement. The Court has reviewed the videotape submitted by Defendants. This video tends to support Defendants' claim that no excessive force was used in the arrest of Plaintiff. Although not showing the entire sequence of events, the video shows Plaintiff exiting the store, passing Deputy Gow's patrol car, Deputy Gow exiting his vehicle and following Plaintiff out into the parking lot. Deputy Gow catches up with Plaintiff and the encounter ensues. The initial hold and Plaintiff's response is unseen as it is blocked from view by a parked vehicle. However, the take-down of Plaintiff and the handcuffing is visible. Plaintiff remains on the ground approximately five minutes when he is assisted to his feet and placed in the patrol car. Plaintiff does not appear to have suffered any injury and does not allege to have been physically injured as a result of the Deputy's use of force.

A reasonable officer could arguably conclude that the use of force was appropriate under these circumstances. Deputy Gow's use of force was not entirely indefensible because Mr. Bennett tensed his arms and began to twist in an effort to pull away. Given Mr. Bennett resistive behavior, Deputy Gow's use of force could be viewed as reasonable to prevent further flight or struggle. Moreover, "[n]ot every push or shove, even if it might later seem unnecessary in the peace of the

ORDER - 8

judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989).

Even if the Court were to conclude there was a triable issue as to whether the use of force during Mr. Bennett's arrest was excessive by constitutional standards, Plaintiff does not satisfy the second prong of the qualified immunity inquiry. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (2007). There is no support for the notion that the use of force by Deputy Gow can be fairly characterized as so egregious as to suggest outright incompetence or intentional use of clearly unnecessary force. At worst, Deputy Gow may have made an error of judgment, erring on the side of his own safety and preventing a perceived flight. The procedure was reasonable and de minimus as Mr. Bennett did not suffer any physical injury as a result of this procedure.

Plaintiff also asserts that Deputy Gow was indifferent to his medical needs while he was seated in the patrol car. However, when Mr. Bennett complained of suffering from the heat in the vehicle, Deputy Gow turned on the air conditioning and opened the divider between the front and back seat to allow air flow throughout the vehicle. When Mr. Bennett complained of further physical discomfort, Deputy Gow immediately called an aid vehicle and released Mr. Bennett for medical treatment.

No evidence has been presented that Deputy Gow knew of and disregarded an excessive risk to Plaintiff's health. Plaintiff has failed to establish a constitutional claim of deliberate indifference. See, Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).

Defendant Gow is entitled to qualified immunity on the claim of excessive use of force. Accordingly, Defendants are entitled to summary judgment on Plaintiff's federal civil rights claim.

**State Law Claims**

**Battery**

A lawful touching by a law enforcement officer cannot be considered a battery. A law enforcement officer making arrest is justified in using sufficient force to subdue prisoner; however,

ORDER - 9

he becomes tort-feasor and is liable for battery if unnecessary violence or excessive force is used in accomplishing arrest. Boyles v. City of Kennewick, 62 Wn. App. 174, 176 (1991). Because the officers' use of force was reasonable, the battery claim against Deputy Gow fails because the touching was lawful.

**False Imprisonment**

The gist of an action for false arrest is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority. Bender v. City of Seattle, 99 Wn.2d 582, 591 (1983). An arrest based upon probable cause is a complete defense to a claim of false imprisonment. McBride v. Walla Walla County, 95 Wn. App. 33, 38 (1999). Here, Deputy Gow had probable cause to make the arrest and thus, there is no cause of action for false imprisonment.

**Intentional Infliction of Emotional Distress**

The elements of the tort of intentional infliction of emotional distress, know as outrage, are: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. Birklid v. Boeing Co., 127 Wn.2d 853, 867 (1995). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby v. Samson, 85 Wn.2d 52, 59 (1975). Dismissal of an outrage claim is appropriate if reasonable minds could not differ as to whether the conduct was sufficiently extreme to result in liability. Dicomes v. State, 113 Wn.2d 612, 630 (1989).

Here, reasonable minds could not differ on the conduct of Deputy Gow in arresting Mr. Bennett. Defendants are entitled to summary judgment.

**Vicarious Liability**

Vicarious liability imposes liability on an employer for the torts of an employee who is acting on the employer's behalf, and thus, if the employee is without fault liability cannot be imposed upon the employer. See Robel v. Roundup Corp., 148 Wn.2d 35, 52-53 (2002). There being no liability

ORDER - 10

on the part of Deputy Gow, there is no claim for vicarious liability on the part of Grays Harbor County.

## Conclusion

For the foregoing reasons, Defendants are entitled to a grant of summary judgment.

ACCORDINGLY;

IT IS ORDERED:

Defendants' Motion for Summary Judgment [Dkt. # 15] is **GRANTED**. Plaintiff's claims are dismissed in their entirety, with prejudice.

DATED this 26th day of August, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 11